

ENTERED
11/15/2011

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| SPECIAL VALUE CONTINUATION | § | |
| PARTNERS, L.P., *et al.*, | § | |
| Plaintiffs | § | Adversary No. 11-3304 |
| | § | |
| v. | § | Judge Isgur |
| | § | |
| GEOFF A. JONES, *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

### Introduction

This Memorandum Opinion concerns whether the Court should transfer this "related to" proceeding to Delaware federal court, or whether the Court should abstain and remand the case to the Texas state court from which it was removed. The Court holds that transfer is unwarranted under both 28 U.S.C. § 1412 and § 1404. The Court will abstain under § 1334(c)(1) and remand the case to Texas state court under § 1452(b).

### Factual Background

Plaintiffs Special Value Continuation Partners, LP, Tennenbaum DIP Opportunity Fund, LLC, and Tennenbaum Opportunities Partners V, LP, (collectively "Tennenbaum") filed a state court lawsuit in Texas alleging that Richard Bachmann, Geoff A. Jones, D. Michael Wallace, Rishi Varma, Brett Cenkus, Stephen Morrell, and Gerald Gray, (collectively "Defendants"), provided misleading financial projections and made misrepresentations in order to secure financing from Tennenbaum for the Defendants' companies. (ECF Doc. 9 at 2). The Defendants were officers and directors of Trico Marine Services, Inc., and its U.S. affiliates ("Holdco") and

Trico Shipping AS, a foreign operating subsidiary of Holdco, and its affiliates ("Opco").  (*Id.*).

Opco and Holdco collectively are referred to as "Trico." (*Id.*).

Trico sought financing from Tennenbaum.  Tennenbaum's allegations stem from the

May, June and July 2010 negotiations surrounding the financing.  Originally, Tennenbaum was

only to loan to Holdco. As the negotiations progressed, Trico indicated it wanted new financing

for Opco as well.  (ECF Doc. 1-2 at 4).  The financing for Holdco was to occur in two stages:

$25 Million prior to filing bankruptcy[1] and $25 Million after Holdco filed for bankruptcy,[2]

collectively the "Holdco loans." (ECF Doc. 1-2 at 4).[3]  The initial loan to Holdco was funded on

June 11, 2010.  (ECF Doc. 1-2 at 6).  On June 29, 2010, Tennenbaum agreed to fund Opco up to

$65 Million.[4]  (ECF Doc. 1-2 at 6).  The loans were secured by Opco's assets.  (*Id.*).

On August 25, 2010, as planned, the Holdco bankruptcies were filed.[5]  In the month prior

to bankruptcy, and in the months directly following, Tennenbaum alleges Trico drastically

revised the financial projections upon which Tennenbaum relied.  (ECF Doc. 1-2 at 9-10).

Eventually, Tennenbaum suspected it had been defrauded.  Tennenbaum filed suit in a California

state court on March 17, 2011 for fraud and negligent misrepresentation.  (ECF Doc. 1 at 3).

Tennenbaum is only seeking damages relating to the Opco loan. (ECF Doc. 1-2 at 1).

Defendants removed the California state court lawsuit to the United States District Court for the

Central District of California.  (*Id.*).  Tennenbaum filed this nearly identical action on May 20,

---

[1] Defendants refer to this loan as the "U.S. Credit Facility."  (ECF Doc. 13 at 2).

[2] Defendants refer to this loan as the "DIP Facility."  (ECF Doc. 13 at 2).

[3] Defendants refer to these loans collectively as the "Trico loans."  (ECF Doc. 13 at 2).

[4] Defendants refer to this agreement as the "Working Capital Facility."  (ECF Doc. 13 at 3).  Tennenbaum did not end up loaning all $65 million.  Opco borrowed $28 million before Tennenbaum terminated the loan commitments and Tennenbaum alleges that $27 million remains outstanding. (ECF Doc. 13 at 3).

[5] Opco never filed bankruptcy.

2011 in Harris County, Texas, (*id.*), and voluntarily dismissed the California suit on May 23, 2011. (*Id.* at 4).

Defendants again removed to federal court on June 17, 2011. (ECF Doc. 1). Tennenbaum filed a Motion to Remand for Lack of Subject Matter Jurisdiction, Motion to Abstain Pursuant to § 1334, and Motion to Remand on Other Equitable Grounds under § 1452. (ECF Doc. 9). Defendants filed a Motion to Transfer under § 1412 and § 1404.[6]

**Analysis**

<u>Which to Decide First?</u>

Tennenbaum argues abstention and remand should be decided prior to transfer. (ECF Doc. 17 at 8). Defendants argue the opposite. (ECF Doc. 27 at 4). Both sides cite cases in support. The Court finds that it should first decide the motion to transfer.

Most of the cases cited by Tennenbaum are distinguishable as they fit into one of two fact patterns. Transfer might not be considered first if a court lacks subject matter jurisdiction, *see, e.g., In re Santa Clara County Child Care Consortium*, 223 B.R. 40 (1st Cir. BAP 1998), or if mandatory abstention applies. *See, e.g., In re Engra, Inc.*, 86 B.R. 890, 893 (S.D. Tex. 1988). Neither situation is applicable.

---

[6] Defendants also argue that the "first-to-file" rule compels transfer. (ECF Doc. 13 at 16-18). The Fifth Circuit described this rule as follows: "a by-product of the well-established axiom that the federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs. . . . The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result. *Sutter Corp. v. P & P Indus.*, 125 F.3d 914 (5th Cir. 1997) (citing *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985). Therefore, if the cases overlap on the substantive issues, they should be consolidated in the jurisdiction first seized of the issues. *Id.* The overlap needs to be substantial, however. *Save Power v. Syntek Fin Corp.* , 121 F.3d 947 (5th Cir. 1997). The Court agrees with plaintiffs that typically the "first-to-file" rule involves opposing parties in mirror litigation. Furthermore, these state law causes of action and the Delaware bankruptcy proceeding do not substantially overlap on substantive issues; much less are they "inextricably intertwined" as Defendants claim. (ECF Doc. 13 at 17). There are certainly overlapping facts between the cases. Most of Defendants' argument regarding overlapping issues relates to factual overlap—not overlap of the substantive issues, i.e. fraud and negligent misrepresentation. The substantive issues of fraud and negligent misrepresentations by nondebtors do not substantially overlap with the substantive issues of the Delaware bankruptcy court proceedings and certainly will not result in duplication of efforts, a ruling which will entrench upon the authority of a sister court, or piecemeal resolution of the issues.

The Court has subject matter jurisdiction over this adversary proceeding only because it is "related to a case under title 11." 28 U.S.C. § 1334(b).  In the Fifth Circuit, "related to" jurisdiction is established when "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987). Defendants, who are principals of Holdco, filed a proof of claim in the Holdco bankruptcy seeking contribution, reimbursement, and indemnity for the costs of defending this action. (ECF Doc. 13 at 11).  Holdco's liability policies, an estate asset, may be used to satisfy the claims of various creditors—including Defendants if they are found liable. (ECF Doc. 13 at 12).  The outcome of this action could conceivably affect the bankruptcy estate. This establishes "related to" jurisdiction.

Mandatory abstention does not apply.  The mandatory abstention provision requires, among other things, that "the district court shall abstain from hearing such proceeding if an action is commenced . . . in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2). The Court agrees with those cases interpreting this language to require a state court action be commenced prior to the bankruptcy proceedings. *See generally* 1 *Collier on Bankruptcy*, ¶ 3.05[2] n.18 (listing other cases so holding and noting a change in statutory language which supports the holding).

As there is subject matter jurisdiction, and mandatory abstention is inapplicable, the Court will decide the motion to transfer first.  If transfer is appropriate under either § 1412 or § 1404, then the transferee court should decide whether to abstain and remand.

Transfer Under 28 U.S.C. § 1412

This Court has held § 1412 is limited to the transfer of "core" matters. *See Longhorn Partners Pipeline L.P. v. KM Liquids Terminals, LLC*, 408 B.R. 90, 97 (Bankr. S.D. Tex. 2009). The Court finds this is not a "core" proceeding and therefore § 1412 transfer is inapplicable.

In the Fifth Circuit, a core proceeding is one that "invokes a substantive right provided by [T]itle 11 or . . . is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987). This state court lawsuit for fraud and negligent misrepresentation is not invoking a substantive right provided by title 11 nor could it only arise in the context of a bankruptcy. Defendants argue the adversary proceeding is nevertheless "core" because: (1) Tennenbaum invoked and consented to the Bankruptcy Court's jurisdiction over the Working Capital Facility[7]; (2) the present litigation will require interpretation and enforcement of the Delaware Bankruptcy Court's orders; and (3) because Tennenbaum filed a proof of claim in the Delaware bankruptcy proceedings. (ECF Doc. 21 at 11). These arguments are not persuasive.

Defendants' first argument fails. Defendants argue it is possible to consent to have a bankruptcy court treat an otherwise "non-core" proceeding as core. (ECF Doc. 21 at 11). To show Tennenbaum's alleged consent, Defendants point out that the Delaware Bankruptcy Court approved a settlement between Holdco (the debtors), Opco (nondebtors), and creditors (including Tennenbaum), in which the stock of a restructured Opco was made available for creditors owed money under the Working Capital Facility.[8] (ECF Doc. 21 at 12). The Delaware Bankruptcy

---

[7] Again, "Working Capital Facility" refers to the $65 million funding agreement between Tennenbaum and Opco. (ECF Doc. 21 at 3).

[8] Holdco guaranteed the Working Capital Facility and therefore liable for any deficiency related to the Opco loan. (ECF Doc. 21 at 14).

Court approved this "debt-for-equity" exchange in which Tennenbaum received stock and cash worth $17.7 million. (ECF Doc. 21 at 12). In the Order approving the settlement, there is a provision that "[t]his Court retains jurisdiction with respect to all matters arising from or related to the implementation of this order." (Delaware Bankruptcy Court Doc. 930 at 7).

Defendants' argument appears to be that any attempts to recover under the Working Capital Facility now become "core proceedings" in the Delaware Bankruptcy Court—and that Tennenbaum consented to this. This argument appears incorrect for at least three reasons. The first is that this state court lawsuit is not an attempt to "recover under" the Working Capital Facility. Tennenbaum is not suing Opco for a deficiency or Holdco as guarantor of the loans. Tennenbaum is suing the principals of Opco and Holdco for fraud and negligent misrepresentation—not breach of contract or any other theory which could be deemed an attempt to "recover under the Working Capital Facility." (ECF Doc. 21 at 12). Second, the Delaware Bankruptcy Court retained exclusive jurisdiction only "with respect to all matter arising from or related to the implementation of this Order." (Delaware Bankruptcy Court Doc. 930 at 7). Defendants have not shown that this state court lawsuit arises from or relates to the implementation of the Order. Third, the Court does not accept that a "retention of jurisdiction" provision can alter the nature of a bankruptcy court's authority over a matter. A bankruptcy court's determination of its authority is akin to a question of subject matter jurisdiction. *Comm. Futures Trading v. Schor*, 478 U.S. 833, 842-43 (1986). It is fundamental that a Court's subject matter jurisdiction cannot be created by an expansive bankruptcy court order. *United States Brass Corp. v. Traveler's Ins. Group*, 301 F.3d 296, 303 (5th Cir. 2002) ("[T]he source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express

terms of the Plan.  The source of the bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157 . . . ."

Defendants' second argument fails because Defendants do not show how interpretation and enforcement of the Delaware Bankruptcy Court's orders will be necessary to adjudicate the state court causes of action.  It might be necessary for a state court to determine the value received by Tennenbaum in the Opco restructuring in order to properly calculate damages. Nevertheless, the interpretation and enforcement of the Delaware Bankruptcy Court's orders is not necessary for valuation.

Defendants' third argument also fails. The Delaware Bankruptcy court has "core" jurisdiction over the claims allowance process.  28 U.S.C. § 157(b)(2)(B).  Tennenbaum filed a proof of claim against Holdco, debtors in the Delaware bankruptcy action, because Holdco guaranteed the Opco loan. (ECF Doc. 21 at 14).  This fact does not make a state court fraud action against Holdco's principals a "core" proceeding in the Holdco bankruptcy, even one relating to negotiations surrounding the Opco loan for which Holdco acted as guarantor.

In the alternative, Defendants ask the Court to: (1) refrain from engaging in a "core" versus "non-core" determination as this "defeats the policy behind the presumption that the home court bankruptcy is the most appropriate forum to make [the decision of whether to abstain and remand]"; and (2) reconsider its holding that § 1412 does not apply to related to ("non-core") proceedings. (ECF Doc. 27 at 20-21).  Neither of these additional arguments is persuasive.

Assuming *arguendo* the home court bankruptcy rule still exists under § 1412,[9] this Court still cannot avoid making a "core" versus "non-core" determination.  As explained above, § 1412 may not be used to transfer related to ("non-core") proceedings.  The "core" versus "non-core"

---

[9] It is possible that the Fifth Circuit's *Volkswagen* opinion alters or negates such a presumption.  *See In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008).

determination is unavoidable for § 1412 transfer, notwithstanding Defendants' contention that this defeats the policy behind the home bankruptcy court presumption.

The Court does not find Defendants' § 1412 textual argument persuasive and reaffirms the ruling in *Longhorn Partners*. Defendants argue that § 1409's use of the word "proceeding"[10] should inform a court's interpretation of § 1412. (ECF Doc. 27 at 21-22). Defendants point out that "proceeding" in § 1409 is followed by the phrase "arising under title 11 or arising in or related to a case under title 11," thereby encompassing related to ("non-core") proceedings. (*Id.*).[11] Therefore, Defendants argue, the word "proceeding" in § 1412 must necessarily be afforded the same breadth. (*Id.*). This argument overlooks the fact that in § 1412 the word "proceeding" is followed simply by the phrase "under title 11" as opposed to "arising under title 11 or arising in or related to a case under title 11."[12] The phrase "under title 11" modifies and limits which proceedings are transferable under § 1412.[13] The Court reaffirms the holding in *Longhorn Partners* that § 1412 may be not be used to transfer "related to" proceedings.

---

[10] "Except as otherwise provided in subsections (b) and (d), a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." 28 U.S.C. § 1409(a). Defendants also point to the title of the section: "Venue of proceedings arising under title 11 or arising in or related to cases under title 11." 28 U.S.C. § 1409.

[11] Defendants actually state: "The word 'proceeding' modifies all of the phrase 'arising under title 11 or arising in or related to a case under title 11 . . . .'" (ECF Doc. 27 at 22). It appears to the Court that it is the latter phrase which modifies the word "proceeding," not the reverse. In any event, the gist of Defendant's argument remains the same—the word "proceeding" should be afforded the same breadth in § 1412 as in § 1409.

[12] "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412.

[13] The Court notes, although this argument was not briefed, that the *Longhorn Partners* holding overlooks one issue. Section 1412 only allows transfer of "a case or proceeding under title 11." 28 U.S.C. § 1412. In *Longhorn Partners*, the Court stated that "Section 1412's application is limited to core matters." This would indicate that all core matters may be transferred under § 1412. Core matters consist of both proceedings *arising under title 11* and proceedings *arising in a case under title 11*. The Court recognizes that, based on the text of § 1412, it would not make sense to allow transfer of proceedings *arising in a case under title 11* but disallow transfer of proceedings *related to a case under title 11*. The holding in *Longhorn Partners* should have stated that § 1412 transfer is only applicable to core proceedings *arising under title 11*. This difference should have little practical effect as the Court can think of few proceedings *arising in a case under title 11* that would arise in any venue other than the home bankruptcy court.

Transfer Under 28 U.S.C. § 1404

A threshold question for § 1404 transfer is whether a civil action "might have been brought" in the venue to which transfer is requested.  28 U.S.C. § 1404(a).  The parties disagree whether the civil action could have been filed in the Delaware bankruptcy court.  Even assuming that the civil action "might have been brought" in Delaware, the Court finds § 1404 transfer otherwise inappropriate.

Defendants have not met their burden of proof for § 1404 transfer.  Defendants as the movants must "demonstrate[] that the transferee venue is clearly more convenient." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).

A court may transfer any civil action "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404.  Courts consider private and public interest factors when determining whether transferring venue is for the convenience of parties and witnesses and in the interest of justice. *Humble Oil & Ref. Co. v. Bell Marine Serv.*, 321 F.2d 53, 56 (5th Cir. 1963).

The private interest factors are: (1) the relative ease and access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).

The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in have localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law. *Id.*  No single factor is dispositive and the above list is neither exhaustive nor exclusive. *Id.*

Private Interest Factors

Relative ease of access to sources of proof weighs slightly in favor of transfer. The Court agrees with Defendants that, in a case where there is no physical non-documentary evidence, the location of physical evidence is of little consequence. As to key party witnesses, on the whole they are located closer to Texas than Delaware. Most Defendants are Texas residents. (ECF Doc. 1-2 at 2). The Tennenbaum entities have their headquarters in Santa Monica, California, which is closer to Texas than Delaware. (ECF Doc. 27 at 12). Yet, the Court agrees with Defendants that it is the location and availability of key third-party witnesses that should be given the most weight. *See Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757 (E.D. Tex. 2000). Defendants identify third-party witnesses for whom they argue Delaware would be more convenient than Texas. (ECF Doc. 27 at 12-13). Defendants argue the Delaware venue will increase the availability of these key third-party witnesses who will provide relevant testimony. (ECF Doc. 27 at 12). Tennenbaum did not produce similar evidence to rebut this. Therefore, this factor slightly favors transfer.

Availability of compulsory process to secure the attendance of witnesses is a neutral factor. Neither party showed why this factor weighs in favor of, or against, transfer. (ECF Doc. 17 at 18; ECF Doc. 27 at 15).

Cost of attendance for willing witnesses also weighs slightly in favor of transfer. For the same reasons listed above, Texas is more convenient for party witnesses. Again, however, as to key nonparty witnesses the only evidence before the Court is that Delaware will be less costly and more convenient for key nonparty witnesses who are likely to testify. (ECF Doc. 27 at 15).

The final private interest factor, all other practical problems that make trial of a case easy, expeditious, and inexpensive, does not favor transfer. Even if Defendants are correct that, under

other circumstances, it should be presumed that a "related to" proceeding can be more easily, expeditiously, and inexpensively tried in front of the home bankruptcy court,[14] the recent Supreme Court decision in *Stern v. Marshall* negates this. 131 S. Ct. 2594 (June 23, 2011). Although the extent of *Stern*'s reach is unclear, there is little question a bankruptcy judge lacks constitutional authority to enter a final judgment in this case. These are state law causes of action by nondebtors against nondebtors. The causes of action neither derive from nor depend upon any agency regulatory scheme. *Stern*, 131 S.Ct. at 2615. Additionally, the causes of action do not stem from the Holdco bankruptcy proceedings nor will the causes of action necessarily be resolved by the claims allowance process in those bankruptcies. *Stern*, 131 S.Ct. at 2618. Entering a final judgment in this case would be the "prototypical exercise of judicial power" and an Article I judge lacks the constitutional authority to do so. *Id.*

As a result, Defendants' argument that it will be easier, more expeditious, and less expensive to try this case in Delaware is unconvincing. Defendants' statement that the Delaware Bankruptcy Court is familiar with the transactional history and complex corporate structures of Trico is undoubtedly true. (ECF Doc. 27 at 19). Yet the Delaware Bankruptcy Court would only be able to write a report and recommendation. The report and recommendation will be subject to *de novo* review by the Delaware District Court, which lacks the Delaware Bankruptcy Court's experience, knowledge, and familiarity with the case. Therefore this factor does not favor transfer.

Public Interest Factors

The administrative difficulties from court congestion do not favor transfer. Defendants presented some limited evidence showing bankruptcy courts in the Southern District of Texas are

---

[14] It is arguable that the Fifth Circuit's 2008 *Volkzwagen* opinion, dealing with inappropriate weight given to plaintiff's choice of venue under § 1404, eliminates such a presumption. *See In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008).

more congested than those in Delaware. (ECF Doc. 27 at 17-18). The evidence, however, is for the year ending in March 2011 and appears to provide only the number of bankruptcy filings, without regard to chapter or the number of accompanying adversary proceedings. (*Id.*). Defendants' evidence is not persuasive. This Court's docket is not overwhelming. Moreover, the real question that must be confronted is the caseload of the Delaware United States District Court vs. the Harris County District Court. There is an absence of evidence on this issue. This factor does not favor transfer.

The local interest in having localized interests decided at home weighs against transfer. Most of the Defendants are Texas residents. (ECF Doc. 1-2 at 2). Many of the alleged fraudulent actions and negligent misrepresentations took place in Texas. (ECF Doc. 1-2 at 4). The Court agrees with Tennenbaum that "it cannot be seriously disputed that the State of Texas has a strong interest in having state law claims asserted against her citizens adjudicated in a Texas court." (ECF Doc. 17 at 22). Defendants' argument that Delaware has an equivalent local interest because the Tennenbaum entities, although headquartered in California, are incorporated in Delaware, is unconvincing.

Familiarity of the forum with the law that will govern the case is neutral or weighs against transfer. Tennenbaum argues that Texas law governs this case. (ECF Doc. 17 at 23). Defendants argue that New York law controls. (ECF Doc. 27 at 18). If Tennenbaum is correct, this would weigh against transfer because a Texas state court will be more familiar with the application of Texas law. Even if New York law does control, Defendants provide no explanation why this favors transfers to the Delaware Bankruptcy Court.

Both parties agree the final factor, avoiding conflict of laws, is neutral.

Defendants argue that judicial economy is an additional factor to be considered in a decision to transfer. Part of the argument rehashes the efficiency analysis related to the fourth of the private interest factors. (ECF Doc. 27 at 19). The Court rejects this argument for the same reasons as stated above. Defendants' other main contention is that, because the Delaware Bankruptcy Court cannot resolve Defendants' proof of claim for indemnity until this case is resolved, judicial economy weighs in favor of transfer because "it is more efficient for Judge Shannon to rule on both Tennenbaum's [fraud allegations] and Defendants' proofs of claim." (ECF Doc. 27 at 19). This argument suffers from the same defect as the other efficiency arguments—Judge Shannon will not be able to enter a final judgment. Defendants also argue that Judge Shannon is in a better position than this Court to weigh all equitable factors in a decision whether to abstain and remand. (ECF Doc. 27 at 20). Accepting *arguendo* this is true, Defendants fail to show how this aids overall judicial economy. Judge Shannon remains without constitutional authority to enter a final judgment relating to the substantive allegations. To the extent judicial economy is a separate factor not sufficiently encompassed by the other eight factors, the Court finds judicial economy does not favor transfer

All § 1404 Factors Combined

The factors of convenience to witnesses and access to sources of proof are the only two which weigh in favor of transfer—and even then only slightly. All other factors are either neutral or weigh against transfer. Defendants have not shown the transferee court to be clearly more convenient.

Discretionary Abstention and Remand

This Court may, in its discretion, decline from hearing this proceeding.[15] Similarly, this court may choose to remand a cause of action on any equitable ground.[16] Courts will consider a number of specific factors in deciding whether to abstain or remand. *See Sabre Tech. v. TSM Skyline Exhibits, Inc.*, 2008 WL 4330897 (S.D. Tex. Sept. 18, 2008). These include:

(1)  the effect or lack thereof on the efficient administration of the estate if the court recommends [remand or] abstention

(2)  extent to which state law issues predominate over bankruptcy issues

(3)  difficult or unsettled nature of applicable law

(4)  presence of related proceeding commenced in state court or other nonbankruptcy proceeding

(5)  jurisdictional basis, if any, other than § 1334

(6)  degree of relatedness or remoteness of proceeding to main bankruptcy case

(7)  the substance rather than the form of an asserted core proceeding

(8)  the feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered in state court with enforcement left to the bankruptcy court

(9)  the burden of the bankruptcy court's docket

(10)  the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties

(11)  the existence of a right to a jury trial

(12)  the presence in the proceeding of nondebtors parties

(13)  comity

(14)  possibility of prejudice to other parties in the action

---

[15] "Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for state law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1).

[16] "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b).

*Id.* at *6 n.22.

Courts have broad discretion when considering abstention or remand under these provisions. *Id.* at *5. Defendants argue the balance should be weighted heavily in favor of the exercise of federal jurisdiction. (ECF Doc. 21 at 19). The cases Defendants cited in support, however, discuss *Colorado River* abstention. They do not support the claim that the balance should be weighted heavily in favor of federal jurisdiction when considering discretionary abstention. Section 1334(c)(1) is a broadly-worded statute allowing federal courts to decline to exercise jurisdiction "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334. In fact, the Fifth Circuit noted that the discretionary abstention provision of § 1334(c)(1) helps prevent the broad language of § 1334(b) from bringing into federal court matters which should be left to state courts to decide. *See Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987). When considering whether to abstain or remand under § 1334(c)(1), the balance should not be weighted in favor of exercising federal jurisdiction.

Factors Favoring Discretionary Abstention and Remand

Factors 1, 2, 5, 7, 8, 10, 11, and 13 all weigh in favor of abstention and remand.

Factor 1 ("estate administration") supports abstention and remand. If not having a case before the home bankruptcy court will negatively effect the administration of the estate, then this factor should weigh against abstention and remand. Here, however, the Court already ruled against Defendants' motion to transfer to the home bankruptcy court. Furthermore, the holding of *Stern v. Marshall* indicates that, even if this case were before the Delaware Bankruptcy Court, the judge is without constitutional authority to enter a final judgment. Therefore, any detrimental effect to the efficient administration of the estate cannot be said to result from a decision to

abstain and remand.  This Court's decision to abstain and remand will not have any negative effect on the efficient administration of the estate which would not already occur.[17]

Factor 2 ("state law issues") strongly supports abstention and remand because, whether New York or Texas law applies, these are solely state causes of action.

Factor 5 ("jurisdictional basis") weighs in favor of abstention and remand because there is neither diversity nor federal question jurisdiction.  Federal jurisdiction is based solely on § 1334.

Factor 7 ("substance and classification") strongly supports abstention and remand because this is not a core proceeding.  In addition, the Court finds the substance of the proceeding is not of the type for which resolution by a bankruptcy court rather than a state court should be favored.  *Cf. Sabre Tech.*, 2008 WL 4330897 at *7 (citing *Sears Petroleum & Transp. Corp. v. Burgess Contr. Servs. Inc.*, 417 F. Supp. 2d 212, 222 (D. Mass. 2006) (noting the importance of having the bankruptcy court adjudicate fraudulent conveyance claims).

Factor 8 ("feasibility of severance") supports abstention and remand.  The Court finds it would not be problematic to sever this lawsuit from the core bankruptcy proceedings.  This lawsuit is between nondebtors, is based entirely on state law causes of action, and is based on events occurring prior to the bankruptcy proceedings.

Factor 10 ("forum shopping") weighs in favor of abstention and remand because the Court does not find the Defendants' allegation of forum shopping convincing.[18]  It is true that Tennenbaum dismissed the California proceeding after removal to federal court and later refiled

---

[17] This factor is defined as "the effect *or lack thereof* on the efficient administration of the estate . . . ." *Sabre Tech.*, 2008 WL 4330897 at *6 n.22 (emphasis added).

[18] In *Sabre Tech.*, the factor is characterized as forum shopping by the party who commenced the proceeding in the bankruptcy court.  The Court interprets this factor to indicate forum shopping by either party should be considered.

in Texas state court.  Defendants allege that "Tennenbaum's choice of forum is so plainly *forum shopping*" and argue that "Tennenbaum will have a full and fair opportunity to present and litigate their claims in the federal forum." (ECF Doc. 21 at 19) (emphasis in original).  The latter statement is correct but Defendants do not explain how it is evidence the former statement is true.  Defendants provide no additional evidence or reasoning to justify its claim of forum shopping.  The Court notes the seemingly unusual situation of Texas residents complaining the other party is forum shopping after being sued in Texas state court for common law fraud and negligent misrepresentations that allegedly occurred in Texas.  Moreover, the Court notes that companies headquartered in Texas chose to file bankruptcy in Delaware; its principals now seek to bootstrap that decision into a tort adjudication in Delaware.  The Court concludes that the forum shopping shoe is most likely on the other foot.

The right to a jury trial supports abstention and remand.  The parties disagree whether Tennenbaum waived the right to a jury trial.  Defendants argue that Tennenbaum waived its right to a jury trial because of a provision contained in Tennenbaum's agreement with Opco.  (ECF Doc. 21 at 20-21).[19]  Tennenbaum argues the waiver provision only applies to a suit against Opco for breach of contract, not a suit against Defendants for fraud and negligent misrepresentations which induced Tennenbaum to enter into the agreement. (ECF Doc. 26 at 6). The issue of waiver of the jury trial is an issue under state law and therefore to the extent that the issue is unsettled, it favors remand.

Finally, Factor 13 ("comity") weighs in favor of abstention and remand because these are solely state law causes of action between nondebtors and there is no sufficiently countervailing federal interest.  *Cf. See Sabre Tech.*, 2008 WL 4330897 at *6 (finding this factor neutral where

---

[19] The provision states: Each of the parties to this agreement hereby irrevocably waives all right to a trial by jury in any action, proceeding or counterclaim arising out of or relating to this agreement, the other credit documents or the transactions contemplated hereby or thereby. (ECF Doc. 21 at 20).

the causes of action, while solely based on state law, included claims for the determination and recovery of fraudulent conveyances).

Factors Weighing Against Discretionary Abstention and Remand

Factors 3 and 4 weigh against abstention and remand.

Factor 3 ("difficulty or unsettled nature of the law") weighs against abstention and remand because, as Tennenbaum admits, "[f]raud and negligent misrepresentation claims are well-settled in Texas law." (ECF Doc. 9 at 21). Defendants argue that New York law applies but agree that either way this case does not present new or unsettled questions of state law. (ECF Doc. 21 at 19).

Factor 4 ("timeliness") weighs against abstention and remand because this cause of action, although initially filed in state court, was promptly removed. *See Sabre Tech.*, 2008 WL 4330897 at *7 (finding this factor weighed against abstention and remand where a related state court proceeding was promptly removed prior to the expense of significant resources).

Neutral Factors

Factors 6, 9, 12, and 14 are neutral.

Factor 6 ("degree of relatedness") is a neutral factor. Although this adversary proceeding is related to the bankruptcy case, its outcome is not dispositive of any issue in the main bankruptcy case. Moreover, the degree of relatedness or remoteness of a proceeding to the main bankruptcy case can neither weigh in favor of nor against abstention and remand when the proceeding will not be heard before the bankruptcy judge who heard the main bankruptcy case.

Factor 9 ('docket congestion") is a neutral factor. As stated above, this Court's docket is not overwhelming. At the same time, it is not so light as to weigh against abstention and

18

remand.  Moreover, there is no evidence comparing this Court's docket with the Harris County Court's docket.

Factor 12 ("presence of nondebtor parties") is a neutral factor because while the parties to this lawsuit are all nondebtors, the Defendants are principals of the debtors in the Delaware bankruptcy proceedings. *See Sabre Tech.*, 2008 WL 4330897 at *6 (finding this factor neutral under similar circumstances).

Factor 14 ("prejudicial effect") is a neutral factor because neither side has sufficiently demonstrated it would suffer prejudice if the Court rules against, or in favor of, abstention and remand.

All Discretionary Abstention and Remand Factors Combined

Only two factors weigh against abstention and remand.  Eight factors weigh in favor of abstention and remand and the remaining four are neutral.  More importantly than the numerical count, the Court finds that the arguments in favor of abstention and remand are of greater importance and persuasion than those that counsel against remand.  Therefore, the Court abstains under § 1334(c)(1) and remands under § 1452(b).

## Conclusion

The Court will issue a separate Order in accordance with this Memorandum Opinion.

SIGNED **November 10, 2011.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE